**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEONARD GOLD, | |
|     Plaintiff, | CIVIL NO. 10-5983(NLH)(AMD) |
|      v. | |
| GENESIS HEALTHCARE CORPORATION, BURLINGTON WOODS CONVALESCENT CENTER, INC., and JOANNA PASTORE, | **OPINION** |
|     Defendants. | |

**APPEARANCES:**

ALAN H. SCHORR
ALAN H. SCHORR & ASSOCIATES, PC
5 SPLIT ROCK DRIVE
CHERRY HILL, NJ 08003

    On behalf of plaintiff

MICHELE HALGAS MALLOY
ELIZABETH D. TEMPIO CLEMENT
LITTLER MENDELSON, PC
THREE PARKWAY
SUITE 1400
1601 CHERRY STREET
PHILADELPHIA, PA 19102

    On behalf of defendants

**HILLMAN,** District Judge

    This matter has come before the Court on defendants' motion for summary judgment on plaintiff's claims that defendants violated his rights under the Family Medical Leave Act and the New Jersey Law Against Discrimination. For the reasons set forth below, defendants' motion will be granted.

## BACKGROUND

In June 2006, plaintiff, Leonard Gold, a 69 year-old New Jersey licensed nurse, began working part-time (20 hours a week) as a clinical reimbursement coordinator ("CRC") at defendant Burlington Woods Convalescent Center, Inc. ("Burlington Woods"). Burlington Woods is owned and operated by defendant Genesis Healthcare Corporation.  Plaintiff's primary responsibility as a CRC was to prepare minimum data set ("MDS") assessments on residents to assess their functional capabilities.  The MDS assessments were transmitted electronically to the State of New Jersey, which used the MDS assessments to determine the amount it would reimburse Burlington Woods for the care provided each to resident.

As of the summer of 2008, plaintiff and his co-worker, Suzette Tuck, a full-time employee, were the two nurses responsible for making MDS assessments.  By that time, the number of residents at Burlington Woods was increasing, and, correspondingly, the amount of work required of plaintiff and Tuck was increasing.  Over the course of time, plaintiff volunteered to work more hours, ultimately working 32 hours a week.[1]

---

[1] Plaintiff claims that because he worked 32 hours a week and received some vacation pay, he was considered a full-time employee by 2007.  Defendants maintain that plaintiff's position was never reclassified as full-time, despite the extra hours worked by plaintiff.  The significance of this dispute is discussed below.

Some time in the fall of 2008, defendant Joanna Pastore, Burlington Woods's Nursing Home Administrator, determined that the CRC staffing was insufficient to serve the increasing MDS requirements.  Pastore requested that the CRC staff budget be increased to two full-time employees starting in January 2009. Pastore's request was approved by the end of 2008, and Pastore authorized Tuck to offer plaintiff the full-time CRC position.

Although the timing is unclear, in January 2009, plaintiff requested leave under the Family Medical Leave Act to care for his ill wife from February 3, 2009 through April 7, 2009.  Plaintiff's FMLA leave was approved by the human resources department shortly thereafter.  Around the same time, Tuck offered plaintiff the full-time position.  Plaintiff rejected the 40-hour, five-day per week position, but offered to work 36 hours, four days a week when he returned from leave.  Plaintiff never directly communicated with Pastore regarding his request for leave or the work schedule he hoped to work when he returned.  Tuck relayed plaintiff's counter-offer regarding the full-time position to Pastore, and Pastore rejected it.  Pastore then determined it would make sense to split the new full-time position into two 20-hour part-time positions, where plaintiff would retain his 20-hour per week budgeted position, and the other 20-hour per week budgeted position would be offered to another nurse.

In the beginning of February 2009, plaintiff commenced his

3

leave, and Burlington Woods offered the new 20-hour CRC position to
Sheila Christian.  Because she had to wait for the state of New
Jersey to grant reciprocity for her Pennsylvania nursing license,
she was not able to start working until May 11, 2009.  When
plaintiff returned in April from his FMLA leave, he resumed working
32 hours per week, but with the knowledge that he would have to go
back to his budgeted 20 hours once Christian started in May 2009.

Plaintiff worked the 20-hour per week schedule until January
2010, when he requested 12 weeks of FMLA leave to care for his wife
who became ill again.  The Burlington Woods human resources
department denied plaintiff's request because he had not worked the
requisite number of hours to qualify for FMLA leave.  Pastore,
however, approved a 30-day personal leave of absence for plaintiff,
beginning on January 11, 2010 and ending on February 8, 2010.
Plaintiff signed a form which explained that if he did not return
to work on February 9, 2010, he would be considered a "no call, no
show," and would be subject to disciplinary action, including
termination.

While on personal leave, plaintiff called Tuck numerous times,
and he contacted the human resources manager, Joy Azikiwe, several
times, to keep them apprised of his wife's condition.  On February
9, 2010, plaintiff spoke with Tuck and told her he would not be
returning until March 10, 2009.  Tuck relayed this information to
Pastore in an e-mail.  When plaintiff did not show up for work on

February 9, 2009, Azikiwe called plaintiff that day to inquire about his intentions, but plaintiff did not answer the call. Pastore determined to terminate plaintiff's employment, and told Azikiwe to prepare and send a letter to plaintiff.  After receiving the letter, plaintiff spoke with Tuck and Azikiwe about his termination, and about reapplying for employment, which he was advised he could do in the termination letter.  Plaintiff never returned to work at Burlington Woods.

Plaintiff filed suit against Burlington Woods, Genesis Healthcare and Pastore, alleging that defendants violated his rights under the FMLA.  Plaintiff also alleges that his termination was in violation of the New Jersey Law Against Discrimination because he was fired due to his age.  Plaintiff also contends in his complaint that he has been damaged under the theory of promissory estoppel.

Defendants have filed for summary judgment on all of plaintiff's claims against them.  In his opposition papers, plaintiff has opposed defendants' motion, except he has withdrawn his claim for promissory estoppel.

## DISCUSSION

## I.   Jurisdiction

This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

5

## II.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for

6

summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

## III. Analysis

### A.   *Plaintiff's claims under the FMLA*

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq., was enacted to provide leave for workers whose personal or medical circumstances necessitate leave in excess of what their employers are willing or able to provide.  Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101).  The FMLA is both intended and expected to benefit employers as well as their employees in order to balance the demands of the workplace with the needs of families.  29 C.F.R. § 825.101(b),(c).

The FMLA affords eligible employees "a total of 12 workweeks of leave during any 12-month period" in order "to care for the spouse . . . of the employee, if such spouse . . . has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  Following FMLA leave, an employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions.  See id. § 2614(a)(1).  The FMLA provides

7

relief for interference with these FMLA rights as well as for retaliation for exercising these FMLA rights.

In this case, plaintiff contends that defendants violated his FMLA rights in several ways.  First, plaintiff contends that his hours were reduced from 32 to 20, and his proposed alternative 36-hour work schedule rejected, in retaliation for requesting the first FMLA leave in 2009.  Second, plaintiff contends that the denial of his request for a 36-hour work week was actually a denial of a request for "intermittent" FMLA leave, which was an interference with his FMLA rights.[2]  Third, plaintiff contends that the restriction of his hours to 20 per week further violated his FMLA rights because it made him ineligible for FMLA leave in 2010.  Finally, plaintiff contends that his termination was a further violation of his FMLA rights because he should have been on the longer leave afforded by the FMLA had defendants not previously violated his FMLA rights.

The FMLA declares it "unlawful for any employer to interfere

---

[2] Defendants point out in their reply brief that plaintiff did not expressly raise an interference claim based on a request for intermittent leave in his complaint or amended complaint, and it was not until he filed his brief in opposition to defendants' motion for summary judgment that plaintiff specifically articulated an intermittent leave interference claim.  The Court finds that even though plaintiff never used the term "intermittent leave" in his complaint or amended complaint, paragraph 9 of plaintiff's amended complaint could be read to state such a claim.  Moreover, because discovery and the record evidence encompasses the substance of such a claim, the Court will consider it, despite the procedural missteps.

with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in the FMLA.  29 U.S.C. § 2615(a)(1).  Such a claim is typically referred to as an "interference" claim.  Sommer v. The Vanguard Group, 461 F.3d 397, 398-99 (3d Cir. 2006).  To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them."  Sommer, 461 F.3d at 399 (citation omitted).  "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  Id. (citation omitted).

In contrast, the "retaliation theory protects employees from suffering discrimination because they have exercised their rights under the FMLA."  Santosuosso v. Novacare Rehab., 462 F. Supp. 2d 590, 596 (D.N.J. 2006) (internal citation and quotes omitted).  The FMLA regulations provide:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c).  In a retaliation claim, "[t]he employer's motive is relevant, and the employer can defend its action as one

based on a legitimate nondiscriminatory reason." Parker, 234 F. Supp. 2d at 488.  Because the issues relevant under a FMLA retaliation claim are similar to those in other areas of employment discrimination, courts examining such claims will generally apply the burden-shifting framework established in McDonnell Douglass Corp v. Green, 411 U.S. 792, 800-06 (1973).  Id.  Under that framework, a plaintiff must first establish a *prima facie* case of discriminatory retaliation under the FMLA, requiring a plaintiff to demonstrate that:

(1) he took FMLA leave,

(2) he suffered an adverse employment decision, and

(3) the adverse decision was causally related to his leave.

Lepore v. Lanvision Sys., Inc., 113 Fed. Appx. 449, 452, 2004 WL 2360994, *2 (3d Cir. 2004) (citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135 (3d Cir. 2004)).

Should a plaintiff establish a *prima facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions.  "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  The employer need not prove that the tendered reason actually motivated its behavior, as

throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). This is a light burden. Id.

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production returns to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion. Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Prod. Inc., 530 U.S. 2097 (2000)). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764 (internal citations and quotes omitted). To do this, plaintiff "must demonstrate such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find unworthy of credence, and hence infer that the employer did not act for [the asserted] non-

11

discriminatory reasons." Id. at 765 (internal citations and quotes omitted).

Plaintiff here has not met his burden to support any of his claims for FMLA violations.  Starting with plaintiff's first FMLA leave in February 2009, the only evidence to support plaintiff's *prima facie* case of retaliation or interference based on that leave arises from the timing of his request for leave and the reduction of his work hours.  Around the same time that he requested FMLA leave in January 2009, plaintiff was informed of the new 40-hour budgeted position.  His FMLA leave was granted, and he was offered the new full-time position.  At this point, plaintiff cannot establish an adverse employment action or FMLA interference.

Instead of accepting the new position, plaintiff requested to modify the 40-hour position to 32 or 36 hours.  Pastore rejected his proposal.  Plaintiff was informed that because he could not work the 40-hour position, it would be split into two positions, where plaintiff would retain the 20-hour budgeted slot that he currently held, and a new person would be hired to fill the other 20-hour spot.  He was also informed that he would be permitted to work additional hours, as he had been doing, upon his return from FMLA leave, until the new hire's nursing license was certified by the state.  Plaintiff claims, however, that these decisions resulted in two FMLA violations: (1) an interference with his request for intermittent leave; and (2) retaliation for his request

12

for FMLA leave.

With regard to plaintiff's interference claim, plaintiff has not presented any evidence that his request for a 36-hour work week was a specific request for intermittent FMLA leave. Although FMLA leave may be taken intermittently, it may only be done so to care for a spouse when it is medically necessary. 29 U.S.C. § 2612(b)(1). Moreover, under the FMLA, even though an employee does not need to expressly assert his rights under the FMLA or even mention the FMLA, an employee is expected to give notice to the employer that sufficiently explains an employee's reason for needing leave so as to allow the employer to determine that his request is covered by the FMLA. See, e.g., Sherrod v. Philadelphia Gas Works, 57 Fed. Appx. 68, 73, 2003 WL 230709, *3 (3d Cir. 2003) (holding that an employee did not have a cause of action under FMLA "because she failed to give her employer sufficient notice that her requested leave qualified under the statute"); see also Shtab v. Greate Bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, 264 (D.N.J. 2001)(citing H.R. Rep. No. 103, at 39 (1993); S.Rep. No. 103- 3, at 27-28 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3) (explaining that in order to safeguard the interests of employers and prevent abuses by employees, Congress included a provision in the FMLA which entitles employers to request medical certification from an employee requesting leave).

The evidence in the record does not support plaintiff's

current contention that he presented his request for a four-day,
nine-hour work week as a request for FMLA leave.  Simply requesting
a modified work schedule is insufficient to avail himself of his
FMLA rights, particularly when he had already formally requested
FMLA leave prior to the reduced-time proposal.  Additionally, it
appears that plaintiff may have been granted his full calendar year
allotment of FMLA leave which began on February 3, 2009, and
plaintiff does not articulate how he would have been entitled to
more intermittent leave upon his return.  Even crediting
plaintiff's contention that defendants should have known that his
reduced schedule request was to care for his wife, a denial of such
a request does not translate into interference with his FMLA rights
when he may not have been entitled to more leave, and when he did
not demonstrate its medical necessity.[3]

Next, with regard to plaintiff's claim that when he used FMLA
leave he was retaliated against by having his hours reduced, his
request for leave and the reduction of work hours, while
contemporaneous with each other, are not causally connected.  The
evidence shows that the decision to make plaintiff's part-time
position into a full-time position predates plaintiff's request for

---

[3] Even if plaintiff was still entitled to more FMLA leave
upon his return from his February-April 2009 leave, he never
followed up to inquire about that remaining time.  Moreover,
whatever the amount of his remaining FMLA leave allotment for
2009, it would not have been enough to sustain a 36-hour work
week indefinitely.  Plaintiff never articulated a proposed end
date for his alleged intermittent leave request.

FMLA leave by several months.  Plaintiff has not provided any evidence that Pastore or anyone else knew as of September 2008 that plaintiff would be asking for FMLA leave in January 2009.

Further, the fact that plaintiff was offered the full-time position around the same time as his request for FMLA leave shows two things: (1) although he was working up to 32 hours most weeks and had received holiday pay on occasion,[4] he was still classified as a 20 hour per week part-time CRC--if he were already "full-time," a new, 40-hour position would not have been created and offered to him; and (2) he received a positive employment action contemporaneous with his FMLA leave, rather than an adverse one. This set of facts does not establish a prima facie case of retaliation.

The subsequent events of plaintiff's rejection of the full-time position, Pastore's declination of plaintiff's proposed alternative schedule, and the ultimate decision to maintain plaintiff at his part-time status and add an additional part-time CRC, similarly do not establish a *prima facie* case of retaliation. Even though plaintiff was "adversely" affected by the decision to

---

[4] Defendants explain that when plaintiff was paid for some holidays, that was in error because part-time employees are not entitled to holiday pay.  Additionally, even though some positions are classified as full-time if the employee works 32 hours per week, a part-time person who works additional hours to total 32 hours a week does not then become reclassified as a full-time employee simply because of the number of hours worked.

split the new full-time position into two part-time positions because it would preclude plaintiff from working the additional 12 hours a week beyond his budgeted 20 hours, his classification as a part-time employee never changed.  Moreover, despite the fact these events occurred around the time plaintiff requested FMLA leave, "the mere fact that an adverse employment action occurs after a [protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."  Hunter v. Filip, 788 F. Supp. 2d 336, 342 (D.N.J. 2011) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997))).

Even if the Court were to find that plaintiff had established a *prima facie* case of retaliation, plaintiff has not met his burden to show that defendants' decisions were a pretext.  Defendants have explained that the budgeting increase for an extra 20 hours of CRC office staffing was due to increasing demands placed on the current CRCs - Tuck and plaintiff - due to more complicated MDS assessment forms and increasing resident population.  Once 80 hours per week was approved for CRC staffing, 40 hours of which Tuck covered, plaintiff was offered the additional hours to become a budgeted full-time employee.  However, once plaintiff declined to accept the 40-hour per week position, the newly added 20 hours of staffing help that plaintiff rejected was offered to a new, part-time

16

employee.  Plaintiff has not presented any evidence to suggest that defendants' reasoning was to retaliate against plaintiff for taking FMLA leave, instead of to fully staff the CRC department to its full budget in order to meet the demands of the state-required MDS assessments.[5]  Thus, plaintiff has failed to "demonstrate such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons."  <u>Fuentes</u>, 32 F.3d at 765.

This finding that plaintiff has not supported a claim for FMLA retaliation for his January 2009 FMLA leave undercuts plaintiff's contention that his termination in February 2010, and defendants' refusal to rehire him, was an additional result of the January 2009 retaliation.  Plaintiff's request for FMLA leave in January 2010 was denied because, having only worked 20 hours per week in the previous rolling calendar year, he failed to qualify for FMLA leave

---

[5] Plaintiff's position is further belied by the fact that upon his return from FMLA leave, plaintiff was able to work additional hours until the new employee was state certified and could begin working.  Permitting plaintiff to work the additional hours beyond his budgeted allotment weighs against a finding that defendants cut his hours because he availed himself of FMLA leave.

as of January 2010.[6]  Plaintiff was permitted to take 30 days of leave under Burlington Woods's own policy, and when he did not return at the required time, he was terminated for the violation of that policy.[7]  Without a finding that his failure to qualify for FMLA leave as of January 2010 was a result of defendants' violation of the FMLA, plaintiff's termination cannot be attributed to any FMLA activity.

Consequently, because plaintiff has failed to meet his burden to establish sufficient facts to sustain any viable FMLA interference or retaliation claim, summary judgment must be entered in defendants' favor.

**B.  *Plaintiff's NJLAD age discrimination claim***

In addition to his FMLA claims, plaintiff contends that defendants discriminated against him because of his age when he was terminated.  In order to successfully assert a *prima facie* claim of age discrimination under the NJLAD, plaintiff must show that: (1)

---

[6] It appears from the record that plaintiff only obtained 953 hours instead of the 1250 hours required under the FMLA.

[7] Plaintiff challenges the propriety of his termination under Burlington Woods's personal leave policy, arguing that his leave should have been extended.  He also argues that he should have been rehired.  Although the Court recognizes that Pastore admits that she had discretion in extending plaintiff's leave under the personal leave policy, and that she did not have a reason not to extend it for plaintiff if he had asked her directly, the application and interpretation of the company's internal leave policy is not relevant to plaintiff's FMLA claims absent other evidence of a FMLA or NJLAD violation.

18

he was a member of a protected group; (2) his job performance met the "employer's legitimate expectations"; (3) he was terminated; and (4) the employer replaced, or sought to replace, him.  Nini v. Mercer County Community College, 968 A.2d 739, 743 (N.J. Super. Ct. App. Div. 2009) (citing Zive v. Stanley Roberts, Inc., 867 A.2d 1133 (N.J. 2005)).  In the case of age discrimination, the fourth element "require[s] a showing that the plaintiff was replaced with a candidate sufficiently younger to permit an inference of age discrimination."  Id. (citation omitted).  If plaintiff can establish a prima facie case, the burden of production then "shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action."  Id. (citation omitted).  If the employer provides such a reason, plaintiff must show that the reason "was merely a pretext for discrimination."  Id. (citation omitted).[8]

Here, plaintiff has established a prima facie case: he was 72 years old; prior to his termination, there were no issues with his

---

[8] Although the standard for analyzing claims under the Age Discrimination Employment Act has changed from the mixed-motive burden shifting analysis to a but-for causation requirement, that standard has not been applied to NJLAD claims.  Harth v. Daler-Rowney USA Ltd., 2012 WL 893095, *3 (D.N.J. March 15, 2012) (citing Geltzer v. Virtua W. Jersey Health Sys., 804 F. Supp. 2d 241, 250 (D.N.J. 2011)).

job performance;[9] he was terminated; and he was replaced[10] with an employee 19 years younger.  Plaintiff, however, cannot meet his burden, beyond this *prima facie* showing, to show that a "prohibited consideration" - age - "played a role in the decision making process," and that plaintiff's age had a "determinative influence on the outcome of that process."  Bergen Commercial Bank v. Sisler, 723 A.2d 944, 953 (N.J. 1999).

Defendants have explained their reason for terminating plaintiff - he failed to return to work on the date approved by Burlington Woods, a date he agreed to in writing.  In order to prove that his age was the real reason he was fired, plaintiff points to two pieces of evidence.  First, plaintiff relates that at some point during his employment, Pastore said, "It's a good thing you're working, at least there will be somebody here older than me."  Second, plaintiff contends that he was replaced by someone 19 years younger, and even though he was willing and able to work,

_____

[9] Defendants argue that plaintiff was not qualified for his position because he failed to return to work at the expiration of his leave.  The Court finds that to be a circular argument.

[10] Defendants contend that Susan Sheehan, born in 1956, was hired as a full-time CRC in May 2010 after plaintiff's termination to replace Tuck, who had relocated to Florida, and not to replace plaintiff.  Defendants do not further explain whether Christian, who was the CRC hired in 2009 for the newly added 20-hour per week position, was still employed at Burlington Woods, or whether she was working full-time.  Regardless of the allocation of the staffing, a new CRC was hired after plaintiff's termination, and she was 19 years younger than plaintiff.  That is sufficient to meet that element of a *prima facie* case of age discrimination.

they did not rehire him, despite it taking two months to hire that
replacement.

Plaintiff's proof is insufficient to show, by a preponderance
of the evidence, that plaintiff's age made a difference in
Pastore's decision to terminate him.  Sisler, 723 A.2d at 955.
Other than one remark by Pastore regarding plaintiff's age made at
some point between June 2006 and February 2010, and the fact that a
new CRC was 54 years old versus plaintiff's age of 72, plaintiff
has not provided any other evidence - direct or circumstantial - to
show that his age had any bearing on his termination.  Indeed,
plaintiff was 69 years old when he was originally hired.  Nothing
in the record shows that defendants exhibited hostility towards
plaintiff because of his age.  Id. at 954 (citing Price Waterhouse
v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)
(noting that stray remarks in the workplace, unrelated to
decisional process, not sufficiently direct evidence of
discrimination to "justify requiring [an] employer to prove that
its hiring or promotion decisions were based on legitimate
criteria"); Young v. City of Houston, 906 F.2d 177, 182 (5th Cir.
1990) (holding that employer's referring to plaintiff using
derogatory terms such as "white token" not sufficient to show
employer relied on race in discharging plaintiff); Castle v.
Sangamo Weston, Inc., 837 F.2d at 1553, 1558 n.13 (characterizing
as circumstantial evidence employer's commenting "everyone over 35

21

should be sacked" and referring to older employees as "little old ladies" and "old cows," and contrasting with example of direct evidence, "a scrap of paper saying, 'Fire Rollins-she is too old.'").

Consequently, plaintiff's claim for age discrimination in violation of the NJLAD fails, and summary judgment must be entered in defendants' favor.

## **CONCLUSION**

For the foregoing reasons, defendants' are entitled to summary judgment in their favor on all of plaintiff's claims against them. An appropriate Order will be entered.


Date: June 11, 2012                      s/ Noel L. Hillman
                                     NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey